IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SHANNA SHEA PAEHL, individually,
and as the natural parent of ASHLEE PAEHL
BLACKBURN, a minor, and RUSSELL
BLACKBURN, individually and as the natural
parent of ASHLEE PAEHL BLACKBURN,
a minor,

        Plaintiffs,

v.                                       CIV 03-097 KBM/LAM

LINCOLN COUNTY CARE CENTER, INC.
d/b/a RUIDOSO CARE CENTER,

        Defendant.

# MEMORANDUM OPINION AND ORDER

This suit is based on diversity jurisdiction and arises out of Plaintiff Shanna Paehl's premature labor and delivery of Plaintiff Ashlee Paehl.  The Complaint seeks recovery of compensatory and punitive damages against Ms. Paehl's employer for negligence, *respondeat superior*, and intentional infliction of emotional distress.  Although it is not entirely clear from the Complaint, as I understand it, Ms. Paehl and her significant other (Plaintiff Russell Blackburn) individually seek compensatory damages for emotional distress.  Mr. Blackburn also seeks recovery for loss of household services.  Furthermore, it appears that Ms. Paehl and Mr. Blackburn are bringing a claim on behalf of Ashlee as well, seeking to recover damages for past and future medical expenses, lost of earning capacity and loss of recreation and enjoyment of life.

This matter is before the Court on the Defendant's Motion For Summary Judgment. *Doc. 45*.  While Defendant does not designate the motion as one for partial summary judgment, I

construe it as such because Defendant does not address Ashlee's claims.  I therefore proceed

based on the assumption that the motion is not directed to Ashlee's claims for damages related to

her alleged personal injuries resulting from the kicking incident.

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to

have me serve as the presiding judge and enter final judgment.  Having carefully reviewed the

parties submissions and relevant authorities, I find the motion well-taken.  That, however, does

not dispose of the entire matter at this juncture, and discovery and a motion to intervene remain

pending.  Judge Martínez has a hearing scheduled for April 7, 2004 to discuss resetting deadlines

for discovery and for a settlement conference.

## I.  Summary Judgment Standard

Summary judgment should be granted if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  FED. R. CIV. P. 56(c).  The Court must "view the evidence and draw any inferences in a

light most favorable to the party opposing summary judgment, but that party must identify

sufficient evidence" that would justify sending the case to a jury.  *Williams v. Rice*, 983 F.2d 177,

179 (10th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986)).

Rule 56 of the Federal Rules of Civil Procedure provides that it is the movant's burden to

demonstrate the absence of a genuine issue of material fact.  *Id.* at 321-323.  Upon such a

showing,

> [the] adverse party may not rest upon the mere allegations or
> denials of the [movant's] pleading, but the adverse party's
> response, by affidavits or as otherwise provided in this rule, must

> set forth specific facts showing that there is a genuine issue for trial.
> If the adverse party does not so respond, summary judgment, if
> appropriate, shall be entered against the adverse party.

FED. R. CIV. P. 56(e).  Rule 56 further requires that those

> [s]upporting and opposing affidavits shall be made on personal
> knowledge, shall set forth such facts as would be admissible in
> evidence, and shall show affirmatively that the affiant is competent
> to testify to the matters stated therein . . . .  The court may permit
> affidavits to be supplemented or opposed by depositions, answers
> to interrogatories, or further affidavits.

*Id.*  Moreover, summary judgment

> is properly regarded not as a disfavored procedural shortcut, but
> rather as an integral part of the Federal Rules as a whole, which are
> designed "to secure the just, speedy and inexpensive determination
> of every action.". . .  Rule 56 must be construed with due regard
> not only for the rights of persons asserting claims and defenses that
> are adequately based in fact to have those claims and defenses tried
> to a jury, but also for the rights of persons opposing such claims
> and defenses to demonstrate in the manner provided by the Rule,
> prior to trial, that the claims and defenses have no factual basis.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## II.  Undisputed Facts

Plaintiff Shanna Shea Paehl was employed by Defendant Ruidoso Care Center ("RCC") as

a nursing assistant, and was pregnant on the date of the incident that is the basis for this suit.

RCC is licensed to provide care for the "mentally retarded."  *Exh. 56,* Exh. L.  As a facility for

such persons, RCC has explained and trained its employees on the potential danger of clients

assaulting the staff.  *See Doc. 46,* Exhs. C-E.[1]

---

[1]  Although the documents attached to Defendant's motion are not authenticated and introduced by
affidavit, see FED. R. CIV. P. (e), Plaintiffs do not challenge the authenticity or admissibility of these
documents.

When sixteen-year-old resident J.R. began yelling and cursing, Ms. Paehl entered J.R.'s room and approached J.R.'s bed, whereupon J.R. kicked Ms. Paehl in the stomach.  *See id.,* Exh. A.  Five days later, Ms. Paehl went into premature labor and her daughter Ashlee, who weighed only one pound and ten ounces, was born that day.  Ashlee remained in the neonatal unit of Presbyterian Hospital  until June 19, 2002.  For purposes of this motion only, Defendants will assume that the kick by J.R. caused the premature labor.  *See id.* at 12.

## III.  Analysis

Defendant argues that the New Mexico Workers' Compensation Act ("Act"), N.M. STAT. ANN. §§ 52-1-1 *et seq.,* provides the exclusive remedy for injuries to Ms. Paehl and for any derivative claims brought by her significant other, Russell Blackburn.  Plaintiffs contend that "Defendant knowingly admitted a violent juvenile as a resident in its nursing home . . . when the facility was not equipped and the staff not trained to properly control such a person."  *Doc. 49* at 2.  They further contend that the "Complaint alleges, ***and Defendant has not disproved,*** that Defendant knowingly placed [Ms. Paehl]  in a position of danger, without justification, and simply so it could fill another bed and increase its profits."  *Id.* (emphasis added).

### A.  Exclusivity of the Worker's Compensation Act

To the extent that Plaintiffs are arguing the burden rests with Defendant, they misperceive their own burden in response to the summary judgment motion.  Defendant has submitted competent, admissible, and uncontroverted evidence demonstrating that it has met the requirements for tort immunity under the Act.   That is:  (1) RCC complied with the insurance provisions of the Act; (2) at the time of the incident, Ms. Paehl was performing services arising out of and in the scope of her employment; and (3) the injury was not self-inflicted and was

4

proximately caused by accident arising out of and in the course of her employment. *See* N.M.

STAT. ANN. § 52-1-9. Therefore, the Act's exclusivity provision bars Ms. Paehl's claims unless

the exception set forth in *Delgado v. Phelps* applies to the facts of this case. *See Delgado*, 131

N.M. 272, 34 P.3d 1148 (N.M. 2001).

Thus, it is Plaintiffs' burden to come forward with competent admissible evidence that the

*Delgado* exception applies to this case. They cite two reasons why summary judgment should be

denied: (1) the assertions set forth in the affidavit of Steve Gaskell, the former admissions

director of RCC who was employed at the time of J.R.'s admission, that suggests RCC admitted

J.R. for financial gain and in disregard of her violent nature; and (2) counsel's Rule 56(f) affidavit

stating that further discovery is required to determine if RCC failed to maintain a safe work

environment or to implement safeguards to prevent attacks by residents. *See Doc. 49* at 3, 19-20;

*id.,* Exhs. A-B.

### B. The Delgado Exception Does Not Apply

In *Delgado*, a supervisor allegedly ordered an inexperienced and untrained employee to

perform a task that was virtually certain to result in serious bodily injury or death to the employee.

Rather than shutting down operations to allow the emergency situation to be allayed, the

supervisor sought to avoid economic losses by sending in the protesting employee to deal with

conditions that resulted in an explosion and the employee's death. Specifically, in order to avoid a

loss of production and revenue by shutting down a furnace, which was pouring 2000 degree

molten rock into a cauldron to the brim, the employer's supervisors instead ordered Delgado to

remove the overflowing cauldron. He initially protested as being unable and unqualified to do so,

but his supervisors insisted that he proceed. After a second protest, he acquiesced, entering a

tunnel.  The lights then went out and the tunnel filled with smoke.  Thereafter Delgado emerged

engulfed in flames.  He died after suffering three weeks of extensive burns to his entire body.

*Delgado,* 131 N.M. at 275, 34 P.3d at 1151.

Under those extreme circumstances, the *Delgado* court held that where the employer

intentionally inflicts or willfully[2] causes the injury, the employer loses the exclusivity protection set

forth in the Act and may be sued in tort.  The New Mexico Supreme Court referred to its past

statements that an employer's misconduct could render an employee's injuries compensable

outside the Act.  The court reevaluated its prior endorsement of the employer's "actual intent"

test for such an exception to the exclusivity of the Act's remedy, and "disabuse[d] New Mexico

courts of the notion that an employer will be deprived of tort immunity only when the employer

actually intends to injure the worker."  *Id.* at 279, 34 P.3d at 1155.

Instead, the *Delgado* court set forth a three-part test for determining when the employer is

deprived of its benefits under the Act.

> [W]e hold that willfulness renders a worker's injury non-accidental,
> and therefore outside the scope of the Act, when:  (1) the worker
> or employer engages in an intentional act or omission, without just
> cause or excuse, that is reasonably expected to result in the injury

---

[2]     Our courts have promulgated two methods for defining willfulness for
purposes of Section 52-1-11.   According to *Tallman v. ABF (Arkansas
Best Freight),* 108 N.M. 124, 133, 767 P.2d 363, 372 (Ct. App. 1988)
(citing *Christensen v. Dysart,* 42 N.M. 107, 76 P.2d 1 (1938)),
willfulness "requires that the worker have knowledge of the peril and the
ability to foresee the injury for which willful misconduct is to blame."
Under the test employed in *Gough v. Famariss Oil & Ref. Co.,* 83 N.M.
710, 714, 496 P.2d 1106, 1110 (Ct. App. 1972) (citation omitted), willful
misconduct means "the intentioned doing of a harmful act without just
cause or excuse or an intentional act done in utter disregard for the
consequences."

*Delgado,* 131 N.M. at 280, 34 P.3d at 1156.

6

> suffered by the worker; (2) the worker or employer expects the
> intentional act or omission to result in the injury, or has utterly
> disregarded the consequences; and (3) the intentional act or
> omission proximately causes the injury.

*Id.* at 280, 34 P.3d at 1156.

The single exhibit offered by Plaintiffs in support of the *Delgado* exception is Mr.
Gaskell's affidavit. There he asserts, in essence, that prior to the admission decision there were
concerns about J.R.'s history of violence, and that he and the director of the DDU were
dispatched to interview J.R. at the Alliance facility where she was then housed. Gaskell indicates
that the director indicated that, "she doesn't seem all that violent to me." In Gaskell's view,
however, Administrator Ruth Wade as the ultimate decision maker authorized an inappropriate
admission based "purely" on economic incentives. *See Doc. 49,* Exh. A.

Defendant seeks to strike the affidavit, both in its reply and by way of separate motion,
arguing that the communication between counsel for Plaintiffs and Mr. Gaskell violates New
Mexico and American Bar Association ethical rules. They further contend that Mr. Gaskell's
affidavit is not based on personal knowledge, contains hearsay, is conclusory, and contains
"expert" opinion for which he is unqualified. *See Docs. 52, 57.* Plaintiffs countered with a
request to file a surreply to address the arguments to strike, as well as a response to the separate
motion. For the reasons and authorities cited by Plaintiffs, I agree that there is no basis to strike
the affidavit based on the argument that it was procured in contravention of ethical rules. *See
Docs. 54, 55, 79.* Moreover, even if the substance of the affidavit is admitted, it does not affect
my analysis under *Delgado* regarding Defendant's decision to admit J.R. as a resident.

J.R. suffered from a mental incapacity just as do other residents of RCC. As such, her

disability presented a similar potential for violence as did other residents' disabilities.  Moreover, employees of RCC were not only aware of that potential, they were specifically trained in how to deal with potentially violent residents.  *See* Exh.C & D.

In other words, RCC is in the business of providing residential care to potentially violent residents, so J.R.'s admission cannot be deemed as "without just cause."  Nor is there evidence that RCC subjectively expected the injury to occur or  "utterly disregarded" such potential risks.  Furthermore, unlike *Delgado,* there is no evidence to suggest that, despite fearing for her safety, Ms. Paehl was ordered to enter the room alone and to approach the agitated J.R. at a close distance alone.  At the very least, Plaintiffs fail to meet the first and second prongs of the *Delgado* test.

Counsel for Plaintiffs contends in his Rule 56(f) affidavit that further discovery must be completed as to the general overall safety of the work environment in this case.  I find that the information set forth in the Rule 56(f) affidavit fails to justify delay in the entry of summary judgment on the limited exclusivity of remedy issue now before me.

### C.  Mr. Blackburn's Derivative Claims Are Barred By The Act

Defendant argues that Mr Blackburn has no claim for loss of consortium because he is not legally married to Ms. Paehl.  The New Mexico courts, however, seem to have moved away from such a bright line distinction for liability.

> Recently, in *Lozoya v. Sanchez*, 2003-NMSC-009, ¶ 21, 133 N.M. 579, 66 P.3d 948, our Supreme Court clearly stated that the determination of who can recover for loss of consortium should be based on facts establishing the quality of a relationship, not on a legal definition establishing or rejecting one.  "It is appropriate that the  finder of fact be allowed to determine, with proper guidance from the court, whether a plaintiff had a sufficient enough relational

> interest with the victim of a tort to recover for loss of consortium."
> *Id.*

*Fitzjerrell v. City of Gallup ex rel. Gallup Police Dept.*, ___ N.M. ___, 79 P.3d 836 (Ct. App. 2003).  The existence of a valid marriage no longer controls the inquiry of whether consortium damages may be recovered where otherwise available.

Even so, Mr. Blackburn's consortium claim is not viable because it is derived from the injuries to Ms. Paehl.  The Act *bars* such "derivative" actions for loss of consortium by even the spouse of an injured worker.  *See Archer v. Roadrunner Trucking, Inc.*, 122 N.M. 703, 930 P.2d 1155 (N.M. 1996) ("because Archer's loss-of-consortium action seeks consequential damages that derive from her husband's ability to state a cause of action for damages resulting from Roadrunner's negligence, and that action is barred by the exclusivity provisions of the Workers' Compensation Act, her loss of consortium action is similarly barred.).  Accordingly, I find Mr. Blackburn's consortium claim barred.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiffs' motion to file a surreply *(Doc. 54)* is GRANTED and Defendant's motion to strike *(Doc. 57)* is DENIED.

**IT IS FURTHER ORDERED** that Defendant's motion be construed as motion for partial summary judgment *(Doc. 45)* and is GRANTED as the individual claims brought be Shanna Paehl and Russell Mr. Blackburn.  Plaintiffs' claims brought on behalf of their daughter, Ashlee Blackburn, are unaffected by this Order.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.

9